## SHEPFER, Admr v WHEELING & LAKE ERIE RAILWAY CO

Ohio Appeals, 5th Dist, Tuscarawas Co

No 392. Decided February, 1932

LEMERT, J.

For a proper determination of the action of the lower court in sustaining defendant's motion and directing the jury to return a verdict for the defendant, it becomes necessary; first, to determine whether or not the defendant was negligent, and whether or not the plaintiff's decedent in traveling over a private crossing, and whether or not the testimony showed any breach of any duty owed by defendant to plaintiff's decedent; second, as to whether or not, as a matter of law, that a reasonable inference could be drawn from the testimony introduced on behalf of plaintiff, save and except that plaintiff's decedent and his son were both guilty of negligence, proximately and directly causing their deaths.

It is to be observed that the statute, §8853, **GC**, upon which apparently plaintiff is relying, relates only to the operation of locomotives and by its terms does not require the giving of statutory road crossing signals even in the case of locomotives at private crossings, unless the view of such crossing is obstructed by embankment, trees, curve or other obstruction to view upon the same line therewith. It appears from the testimony in this case that no locomotive was attached to the box cars as they came down the Clay Company switch to the Gerber crossing. Consequently, we believe that §8853, **GC**, could not have any application. There is no testimony in the record as to what precautions were taken by the company as the cars were approaching this crossing, because there was no eye witness to the occurrence, who testified on behalf of the plaintiff.

It is to be noted that counsel for the

plaintiff, in the trial of this case, frankly stated that there was no obstruction of any kind to interfere with the view of cars approaching on the Clay Company switch towards the Gerber crossing from the east. It can not be presumed that the Railway Company was negligent in the operation of its cars. The rule is well settled in this state that where the doctrine of res ipsa loquitor is not involved, negligence is never presumed from the mere fact of accident and resulting injury.

In 114 Oh St, 423:

"Where the doctrine of res ipsa loquitor is not involved, negligence is never presumed from the mere fact of an accident and resulting injury, but specific acts or omissions indicating failure on the part of the defendant to exercise due care must be alleged as the direct and proximate cause of the injury, and the burden is upon the plaintiff to prove the same."

In 119 Oh St, 422:

"A presumption of negligence is never indulged from the mere fact of injury, but the burden of proof is upon the plaintiff to prove the negligence of the defendant and that such negligence is a proximate cause of injury and damage."

The same rule has been approved by the Supreme Court in 122 Oh St, 315, wherein it was held:

"It will not be presumed that an injury from a cause from which a liability arises, when the fact of the injury is equally consistent with the presumption that it arose from one of several other separate and distinct causes which do not give rise to a liability."

The rule universally adopted and followed is to the effect that unless the terms of the statute governing road crossing signals specifically apply to private crossings, there is no duty enjoined on a railroad company to give the statutory road crossing signals at a private crossing. It has been so held in 290 Federal, 916 and in 158 Northeastern, 639.

An examination of the record in the instant case convinces us that the testimony introduced in the court below renders it impossible to apply the modification of the usual rule contained in the statute hereinbefore quoted. Therefore, there being no testimony showing negligence on the part of the railroad company, introduced in the court below, then no presumption of negligence is proper. Therefore, it would follow that the court below was right, for this reason alone, in directing a verdict.

The question then presents itself as to whether or not, as a matter of law, any reasonable inference could be drawn from the testimony introduced on behalf of plaintiff, save and except that plaintiff's decedent and his son were both guilty of negligence, proximately and directly causing their deaths.

It has been held in 118 Oh St, 480, that:

"Where in an action for damages sounding in tort the testimony of the plaintiff clearly and unmistakably establishes negligence on the part of the plaintiff, directly and proximately contributing to the production of the injury complained of, and there is no evidence in the record tending to show that the negligence of the other party was wanton or wilful, and hence of such a character as to relieve against contributory negligence, it is the duty of the trial court, at the close of all the evidence, to direct a verdict in favor of the defendant, and the omission so to do is prejudicial error."

In 123 Oh St, 494:

"Where it appears that, at the close of the plaintiff's testimony or at the close of the entire evidence, there is no reasonable presumption other than that plaintiff's negligence proximately contributed to his injury, it becomes the duty of the court to sustain motions in defendant's favor for a directed verdict, unless the defendant's conduct amounts to wantonness or wilfulness."

"While the jury may indulge in reasonable presumptions in regard to the proximate causes of an accident, it cannot guess or speculate in respect to such causes. Where the issue presented to it is, whether the negligence proximately causing the accident was that of the defendant or of the plaintiff, or of both combined, and the evidence in that respect, including such presumptions, stands in equipoise or is more favorable to the defendant, it becomes the jury's duty to return a verdict for the defendant."

Considering the undisputed facts in this case, we do not believe that it can be said that either plaintiff's decedent or his agent, the driver of the truck, used ordinary care for their own safety. The evidence is silent as to whether or not plaintiff's decedent or his agent did look and listen for the approach of trains at a time and place when such looking and listening would be effective.

The record discloses that both plaintiff's decedent and his son had used the tipple and the crossing over the railroad or switch on numerous occasions from the date of its construction back in 1926; that they were familiar with the crossing and all the surroundings at and near where the accident happened, so that the record discloses that both plaintiff's decedent and the son were entirely familiar with the practice of drifting cars down the Clay Company switch from the plant to the defendant company's track, and the evidence submitted clearly shows that there was no obstruction of any kind to prevent a person who was going over the Gerber crossing from observing the approach of trains from the east or from the direction in which these box cars were coming on the day of the accident.

The whole claim of plaintiff's counsel, both in oral argument and in written brief, is based upon the claimed fact that the defendant was guilty of negligence and that some proof of negligence appeared in the testimony offered on behalf of plaintiff in the trial of the case. We do not agree with counsel for plaintiff in that contention, and an examination of the record convinces us that there was no negligence shown on the part of the defendant Railway Company, and if this is the fact, then the action of the lower court must be sustained, irrespective of any contention that the question of contributory negligence should be left for the jury.

It is contended on behalf of the plaintiff that on some occasions the Railway Company blocked its cars above the Gerber crossing on the Clay Company switch, and counsel seek to infer that the plaintiff's decedent and his son were deceived into believing that the cars at the time of the accident were standing still. This inference does not seem to be borne out by the testimony of the witnesses who came to the scene of the accident immediately thereafter, which was to the effect that the leading box car proceeded over the Gerber crossing a distance of from fifty to sixty feet after having struck a heavy truck loaded with slag, so that from this testimony it would be reasonable to infer that the cars were traveling at a considerable rate of speed, so that the persons about to use the Gerber crossing could have observed that the cars were moving and not standing still.

While it is a familiar and well recognized rule that it is possible to base an inference upon a proven fact, there is no legal justification for basing an inference upon an inference. The Supreme Court and Court of Appeals of Cuyahoga County have very nicely treated this subject in **107 Oh St, 204; 114 Oh St, 324; 25 Oh Ap, 328.**

To make a proper deduction for the claim made by plaintiff in error, the record should show that either the plaintiff's decedent or his son had knowledge of the alleged practice of blocking cars above the Gerber crossing. This the record failed to show.

Taking another view of the testimony in the instant case, if the cars were moving at a very slow rate of speed, in order to have struck the truck in which plaintiff's decedent was riding, when it was proceeding over the crossing, they must have been not more than a few feet from the crossing at the time the truck was driven thereon, and plainly visible to any person going onto the Gerber crossing.

Counsel for plaintiff place some reliance upon a case reported December 22nd, 1931, in the "Ohio Bar", Ware v The Cincinnati Northern Railroad Company. It is necessary only to examine the facts of this case to clearly distinguish it from the instant case. First of all, the view of the approaching train from the direction in which the engine and three cars were coming was entirely cut off by a building. In the second place, there was an engine attached to these cars and the statutory provision requiring the giving of statutory signals would clearly apply. Third, there was no evidence that the engine and cars were in sight or were approaching when the plaintiff turned into the space between the light and power plant and the side track, and that had he looked, it would have availed him nothing by way of warning. Fourth, there was no testimony in the case to show a continuous user by the railroad company in a certain manner, all to the knowledge of the person injured, nor did it appear in the case that the crossing in question was a private crossing.

It has already been pointed out that both Farrell and his son were thoroughly familiar with the practice of the Railway Company in making use of this switch and that from the frank admissions of counsel it must be conceded that had either plaintiff's decedent or his son and agent looked for the approach of cars from the direction in which the box cars in question were coming, they must have seen these cars.

The other case cited by counsel is the case of **The Cleveland, Cincinnati, Chicago & St. Louis Railway Company v Kuhl, Administratrix, 123 Oh St, 552.** In this case Kuhl was killed in a crossing accident arising out of the collision of his Ford automobile with a backing engine of the defendant railroad company. The testimony showed that there were five tracks and a switch track, making in all six tracks at the crossing. It appeared also in this case that the locomotive was backing and that the view of a traveler approaching the crossing was

obstructed by a fence, a high bank and a line of telegraph poles. The Supreme Court said that inasmuch as there were several tracks to go over that it was altogether possible that the plaintiff's decedent having looked to the north, the direction from which the train came which struck him, he then looked to the south for approaching trains on the other tracks and that when he looked back to the north again it was too late to avoid injury to himself. No circumstance such as this exists in the instant case, because it affirmatively appears from plaintiff's own testimony that had he looked and listened he still had time to save himself.

So that in the instant case the conclusion we draw from the record and the testimony introduced on behalf of plaintiff is that plaintiff's decedent was negligent in failing to exercise the degree of care which the Supreme Court has repeatedly held persons going over railroad crossings must exercise for their own safety.

So, believing that the statute governing railroad crossing signals in this state plainly shows it to be inapplicable to the instant case, and believing the testimony fails to reveal any negligence on the part of the defendant, we find and believe that the court below was right in directing a verdict for the defendant.

So believing, the finding and judgment of the court below will be and the same is hereby affirmed. Exceptions may be noted.

SHERICK, PJ, and MONTGOMERY, JJ, concur.